**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re Mobile Telecommunications Technologies, LLC, | Case No. 16-md-02722-LPS-CJB |
| ARRIS GROUP INC.,<br><br>Plaintiff,<br><br>v.<br><br>MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>Defendant. | C.A. No. 16-259-LPS-CJB |
| UBEE INTERACTIVE, INC.<br><br>Plaintiff,<br><br>v.<br><br>MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>Defendant. | C.A. No. 16-260-LPS-CJB |

Richard L. Renck, DUANE MORRIS LLP, Wilmington, DE
L. Norwood Jameson, Matthew C. Gaudet, Alison H. Hutton, DUANE MORRIS LLP, Atlanta, GA
Joseph A. Powers, DUANE MORRIS LLP, Philadelphia, PA

Counsel for ARRIS Group Inc. and Ubee Interactive, Inc.

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE
Henning Schmidt, Daniel R. Scardino, Drew Zerdecki, Kyle Harter, REED & SCARDINO LLP, Austin, TX

Counsel for Mobile Telecommunications Technologies, LLC.

---

**MEMORANDUM OPINION**

March 20, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

ARRIS Group Inc. ("ARRIS") and Ubee Interactive, Inc. ("Ubee") (collectively, "DJ Plaintiffs") filed suits against Mobile Telecommunications Technologies, LLC ("MTel" or "Patentee"). DJ Plaintiffs seek declaratory judgments that neither they nor the purchasers of their products infringe MTel's United States Patent Nos. 5,590,403; 5,915,210; and 5,659,891 (collectively, the "patents-in-suit" or "asserted patents"). (C.A. 16-259 D.I. 1; C.A. 16-260 D.I. 1) (the "Complaints")

Before the Court are MTel's motions to dismiss DJ Plaintiffs' claims for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). (C.A. No. 16-259 D.I. 33; C.A. No. 16-260 D.I. 33) (the "Motions") For the reasons that follow, the Court will deny MTel's Motions.

## I. BACKGROUND

### A. Procedural History

These cases are two of 14 actions in a multidistrict litigation centralized in the District of Delaware for coordinated or consolidated pretrial proceedings. On January 4, 2016, Patentee MTel filed seven suits in the United States District Court for the Eastern District of Texas (the "Eastern District of Texas"), each alleging infringement of the three patents-in-suit.[1] The seven actions were consolidated into one lead case on April 11, 2016. (C.A. No. 16-692 D.I. 30)

[1]The seven cases (and respective defendants) are: C.A. No. 16-692 (Time Warner Cable LLC, Time Warner Cable Enterprises LLC, and Time Warner Cable Texas LLC (collectively, "TWC")); C.A. No. 16-693 (Bright House Networks, LLC ("BHN")); C.A. No. 16-694 (Charter Communications Inc. ("Charter")); C.A. No. 16-695 (Cox Communications, Inc. ("Cox")); C.A. No. 16-696 (Aruba Networks, Inc., Hewlett Packard Enterprise Company, and HP Inc. ("HP")); C.A. No. 16-697 (Brocade Communications Systems, Inc. ("Brocade")); and C.A. No. 16-698 (Juniper Networks, Inc. ("Juniper")).

On April 13, 2016, DJ Plaintiffs ARRIS Group Inc. and Ubee Interactive, Inc. filed separate actions against MTel in this Court, each seeking declaratory judgment of non-infringement of the patents-in-suit. (C.A. No. 16-259 D.I. 1; C.A. No. 16-260 D.I. 1) On April 19, 2016, BHN filed a similar declaratory judgment action in this Court. (C.A. No. 16-277 D.I. 1)

On May 3, 2016, MTel filed four additional lawsuits in the Eastern District of Texas against four new defendants, alleging infringement of the same three patents.[2] Three of these cases were consolidated into one lead case on July 21, 2016 (C.A. No. 16-700 D.I. 6), and the fourth was added on July 29, 2016 (*id.* at D.I. 7). (Hereinafter, the Court refers to the 11 actions filed in the Eastern District of Texas as the "Texas Actions" and the defendants in those actions, collectively, as the "Texas Defendants.")

DJ Plaintiffs and the Texas Defendants fall into two general categories. ARRIS, Ubee, Juniper, Ruckus, Aerohive, Brocade, HP, Firetide, and Xirrus are Wi-Fi equipment providers. Cox, BHN, Charter, and TWC are cable network operators.

On August 5, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") determined that centralization of the 14 actions involving MTtel was appropriate, and transferred the cases to this Court for coordinated or consolidated pretrial proceedings. (Case No. 16-md-2722 ("MDL") D.I. 1)

[2]The four cases (and respective defendants) are: C.A. No. 16-699 (Ruckus Wireless, Inc. ("Ruckus")); C.A. No. 16-700 (Aerohive Networks, Inc. ("Aerohive")); C.A. No. 16-701 (Xirrus, Inc. ("Xirrus")); and C.A. No. 16-702 (Firetide, Inc. ("Firetide")).

**B. Patents-in-Suit**[3]

The patents-in-suit generally relate to wireless telecommunications. The '403 patent is entitled "Method and System for Efficiently Providing Two Way Communication Between a Central Network and Mobile Unit." The claims of the '403 patent cover methods for wirelessly simulcasting information signals. ('403 patent at 33:11-30, 34:35-62)

The '210 patent is entitled "Method and System for Providing Multicarrier Simulcast Transmission." The claims of the '210 patent cover systems for wirelessly transmitting information via two sets of carrier signals in simulcast. ('210 patent at 33:47-62, 34:44-64, 36:7-24)

The '891 patent is entitled "Multicarrier Techniques in Bandlimited Channels" and claims a system and methods for transmitting wireless signals using specific frequency spacing for carriers in a band-limited channel. ('891 patent at 6:4-44)

**C. MTel's Motions**

MTel's pending motions arise out of DJ Plaintiffs' declaratory judgment actions against MTel. Both DJ Plaintiffs sell networking equipment to cable network operators, including the cable network operators sued in the Texas Actions by MTel. (D.I. 1 at ¶¶ 4, 13)[4] DJ Plaintiffs' Complaints allege that "MTel's infringement allegations . . . are directed at the design and operation of the accused [IEEE] 802.11 a, g, n, and ac standard compliant Wi-Fi products"

---

[3]The patents-in-suit can be found in Exhibits 1, 2, and 3 to the Complaint in C.A. No. 16-259.

[4]The Complaints in the Ubee and ARRIS actions, as well as the parties' briefing on the pending Motions, are substantially identical in both actions. For simplicity, the Court will address the issues in both Motions together. Hereinafter, all references to the docket index ("D.I.") are to C.A. No. 16-259, unless otherwise noted.

offered by DJ Plaintiffs ARRIS and Ubee. (*Id.* at ¶ 5) The MTel complaints filed in the Texas Actions "specifically mention [DJ Plaintiffs'] products as 'examples' of the allegedly infringing [equipment] provided by [DJ Plaintiffs'] customers which directly infringe the Patents-in-Suit." (*Id.* at ¶ 6) DJ Plaintiffs allege that their declaratory judgment actions are well-founded because there are "actual justiciable controvers[ies] between [them] and MTel based on the complaints filed by MTel against [DJ Plaintiffs'] customers . . . and because [DJ Plaintiffs have] the expectation that MTel may file additional complaints now or in the future against other customers purchasing [their] IEEE 802.11 a, g, n, or ac compatible products." (*Id.* at ¶ 7) As such, DJ Plaintiffs seek judgments declaring that they, and the purchasers of their 802.11 a, g, n, and/or ac products, "have not infringed, and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim" of the asserted patents. (*Id.* at ¶¶ 25, 29, 33)

MTel filed the pending Motions on October 7, 2016, as to ARRIS and Ubee, asserting that there is no case or controversy between either DJ Plaintiff and MTel. (D.I. 33) The Court heard oral argument on MTel's Motions on October 26, 2016. (*See* MDL D.I. 71) ("Tr.")

## II. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject-matter jurisdiction." A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* at 358 (internal quotation marks and citations omitted). In reviewing a factual attack, the court may consider evidence outside the pleadings.

*See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). MTel's Motions present a facial attack because they focus on the allegations in DJ Plaintiffs' Complaints and why those allegations assertedly do not give rise to subject matter jurisdiction. (D.I. 34 at 5-7; D.I. 41)[5]

The Declaratory Judgment Act ("Act") requires that a "case of actual controversy" exist between the parties before a federal court may exercise jurisdiction. 28 U.S.C. § 2201(a). In determining whether there is subject matter jurisdiction over declaratory judgment claims, a court should ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted); *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335-36 (Fed. Cir. 2008). A case or controversy must be "based on a real and immediate injury or threat of future injury that is caused by the defendants – an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC*, 537 F.3d at 1339 (emphasis omitted). Thus, in the patent context, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some

---

[5]In its briefing, MTel does refer to documents outside of the pleadings, such as exhibits and briefing filed by DJ Plaintiffs. (*See, e.g.*, D.I. 41 at 6) But MTel is not referencing these materials in order to challenge the factual accuracy of allegations in the DJ Plaintiffs' Complaints; rather, MTel's contention is that the content of the Complaints does not support subject matter jurisdiction. *See generally TSMC Tech., Inc. v. Zond, LLC*, 2015 WL 661364, at *3 & n.4 (D. Del. Feb. 13, 2015) (determining that defendant's motion to dismiss for lack of subject matter jurisdiction was facial attack, despite references in defendant's briefing to documents outside of pleadings).

affirmative act by the patentee." *Id.* (internal quotation marks and citation omitted). When the conduct of the patentee can be "reasonably inferred as demonstrating intent to enforce a patent" against the declaratory judgment plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated only implicitly. *Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).

A decision as to whether an actual controversy exists in the context of a patent declaratory judgment claim "will necessarily be fact specific and must be made in consideration of all the relevant circumstances." *W.L. Gore & Assocs., Inc. v. AGA Med. Corp.*, 2012 WL 924978, at *4 (D. Del. Mar. 19, 2012) (citing *MedImmune*, 549 U.S. at 127); *see also Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 837 F.3d 1249, 1252 (Fed. Cir. 2016). The burden is on the party asserting declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time that the claim for declaratory relief was filed and that it has continued since. *See Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014). "It is well-established that, in patent cases, the existence of a case or controversy must be evaluated on a claim-by-claim basis." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

## III. DISCUSSION

MTel contends that DJ Plaintiffs' Complaints are deficient because they do "not allege[] facts showing the existence of an actual controversy, direct or indirect" between ARRIS or Ubee, on the one hand, and MTel, on the other. (D.I. 34 at 1) DJ Plaintiffs respond that they have adequately pled an actual case or controversy between the parties arising out of MTel's: (1) specific accusations in the Texas Actions that DJ Plaintiffs' products directly infringe the

asserted patents, (2) suits against suppliers that are similarly-situated to DJ Plaintiffs, and (3) infringement contentions against Plaintiffs' customers based on the features of DJ Plaintiffs' products. (D.I. 39 at 1) While the Court will address each of these bases for jurisdiction, it adheres to the requirement that, ultimately, a decision must be made as to whether "the totality of the circumstances establishes a justiciable controversy." *Danisco*, 744 F.3d at 1327.

**A. Accusations Against DJ Plaintiffs' Products in Customer Suits**

The Complaints allege that MTel has levelled infringement allegations "directed at the design and operation of the accused 802.11 a, g, n, and ac standard compliant Wi-Fi products, offered by [DJ Plaintiffs]." (D.I. 1 at ¶ 5) "Each of [MTel's] complaints [in the Texas Actions] specifically mention[s] [DJ Plaintiffs'] products as 'examples' of the allegedly infringing Wi-Fi Enabled CPE provided by [DJ Plaintiffs'] customers which directly infringe the Patents-in-Suit." (*Id.* at ¶ 6) Because ARRIS and Ubee sell wireless routers and access points that are certified as complying with one or more of the 802.11 a, g, n, and ac standards (*id.* at ¶ 14), DJ Plaintiffs argue that they are "square in the middle of [the] dispute" underlying MTel's infringement cases in the Texas Actions (D.I. 39 at 10).[6]

"The mere existence of a potentially adverse patent does not cause an injury nor create an imminent risk of injury." *Prasco, LLC*, 537 F.3d at 1338. "[D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics., Inc.*, 480 F.3d 1372,

[6]ARRIS further notes that "MTel has never offered any assurance that it does not intend to sue ARRIS for infringement of the Patents-in-Suit" (*id.* at 8 n.4), but because this fact was not pled in ARRIS's Complaint, the Court will not consider it here. *See Aichele*, 757 F.3d at 357-58.

1380-81 (Fed. Cir. 2007). MTel argues that, because it has not taken any action specifically targeting ARRIS or Ubee, any perceived dispute between the parties is purely speculative. (*See* D.I. 34 at 2; D.I. 41 at 3) Additionally, MTel contends that the suits against DJ Plaintiffs' customers that identify ARRIS and Ubee products are irrelevant because "the mere existence of such suits against customers, absent any adverse legal interest, does not create a justiciable controversy." (D.I. 34 at 3) (citing *Microsoft Corp. v. DataTern,* 755 F.3d 899, 904 (Fed. Cir. 2014) ("To the extent that [parties] argue that they have a right to bring the declaratory judgment action solely because their customers have been sued for direct infringement, they are incorrect.") MTel further asserts that suits against customers may give rise to standing for a supplier (such as ARRIS or Ubee) only if "(a) [the supplier] is legally obligated to indemnify its customers from infringement liability, or (b) it may be liable for indirect infringement based on the alleged acts of direct infringement by its customers." (D.I. 34 at 3; D.I. 41 at 2 (citing *Arris Grp. Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011))

The connections between MTel's Texas Actions and ARRIS and Ubee are not as negligible as MTel suggests. MTel's complaints in the Texas Actions expressly identify ARRIS and Ubee products as "examples" of equipment that directly infringe the asserted patents. (D.I. 1 at ¶ 6 & Ex. 4 at Ex. E, Ex. 5 at Ex. E, Ex. 6 at Ex. E) Such repeated references identifying DJ Plaintiffs' products as infringing may give rise to a "substantial controversy" about whether those products infringe the patents-in-suit. *See Intel Corp. v. Future Link Sys.,* LLC, 2015 WL 649294, at *7-8 (D. Del. Feb. 12, 2015) (finding that actual controversy could be "reasonably inferred" from "repeated, explicit focus on [declaratory judgment plaintiff's] proprietary technology"); *Adidas AG v. Unequal Techs. Co.*, C.A. No. 16-52 D.I. 19 at 18 & n.10 (D. Del. Nov. 23, 2016).

It is not necessary for DJ Plaintiffs to demonstrate that MTel has made specific threats of litigation against them in order to establish subject matter jurisdiction. *See Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013).

Moreover, the Court disagrees with MTel's narrow interpretation of the circumstances under which a patentee's customer suits may support a finding of subject matter jurisdiction for a declaratory judgment action brought by a supplier against that patentee. The existence of indemnification obligations or theories of indirect infringement are not prerequisites for establishing subject matter jurisdiction in such situations. A declaratory judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer. *See Intel Corp.*, 2015 WL 649294, at *7 n.10 (D. Del. Feb. 12, 2015). For instance, "[i]t is entirely possible that a customer and vendor can both directly infringe a patent based on the same conduct." *Microsoft Corp. v. GeoTag, Inc.*, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014) (noting that during prior litigation initiated by patentee against customers of declaratory judgment supplier plaintiffs, patentee "could just as easily have asserted a claim of direct infringement against [suppliers, including plaintiffs], based on the same underlying circumstances in the customer suits. An express accusation [of direct infringement] by [the patentee] was unnecessary."); *see also Intel Corp.*, 2015 WL 649294, at *7 n.10 ("There could well be situations, particularly regarding a patent claim covering a product, system, or apparatus, where a patentee clearly accuses a customer of direct infringement of a claim solely due to the use or sale of a component purchased from a manufacturer supplier.").

Here, as DJ Plaintiffs state, MTel's infringement theories are not "customer-specific;" rather, "MTel accuses ***all products*** that support the IEEE 802.11 a, g, n or ac standards of

infringing the Patents-in-Suit." (D.I. 39 at 10) (emphasis added) The IEEE 802.11 standard functionality "is not customer-specific but rather built directly into the equipment sold by [DJ Plaintiffs] to [their] customers." (*Id.* at 11) Thus, the underlying circumstances giving rise to potential suits against ARRIS or Ubee are no different than they are for a suit against these suppliers' customers. DJ Plaintiffs are, therefore, correct in arguing that MTel's litigation conduct, "which includes suing identically situated parties and asserting identical infringement claims involving identical standards and identical infringing conduct . . . . affirms the conclusion that [DJ Plaintiffs are] subject to a real and immediate threat and that a controversy does exist between the parties." (*Id.* at 3)

**B. Suits Against Similarly-Situated Suppliers**

The Complaints also state that MTel has sued other manufacturers of 802.11 a, g, n and/or ac complaint products – namely, Aruba, HP, Brocade, and Juniper. (D.I. 1 at ¶ 19)[7] DJ Plaintiffs argue that "because MTel's litigation strategy includes suing not only multiple-system operators, like [DJ Plaintiffs'] Customers, but also manufacturers of Wi-Fi enabled devices, [DJ

[7]MTel also filed suit against Ubee in the Eastern District of Texas on April 29, 2016 (D.I. 40, Ex. D), but later dismissed the action without prejudice (D.I. 39 at 9). MTel argues that this suit is "irrelevant to the determination of subject matter jurisdiction" because it was filed ***after*** ARRIS and Ubee filed their Complaints here in Delaware. (D.I. 41 at 4) (citing *W. Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382-84 (Fed. Cir. 2010)) DJ Plaintiffs respond that the Court may take judicial notice of MTel's suit against Ubee to "confirm[] that a case or controversy existed between MTel and Ubee." (D.I. 39 at 9) (citing *BP Chems.*, 4 F.3d at 980; *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 2014 WL 4222902, at *3 n.3 (D. Del. Aug. 25, 2014) (stating post-complaint acts may "further bolster the case for subject matter jurisdiction, if jurisdiction otherwise existed at the time of suit")) However, in a facial attack on subject matter jurisdiction, the Court's examination is limited to the complaint and the documents referenced therein. Thus, the Court does not consider as pertinent the post-Complaints filing by MTel of an action in Texas against Ubee.

Plaintiffs] had every expectation that [they] would face litigation next." (D.I. 39 at 8) In support of this argument, DJ Plaintiffs cite *Micron Technology, Inc. v. MOSAID Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), in which the Federal Circuit found that subject matter jurisdiction was established where the declaratory judgment defendant ("MOSAID") had sued several competitors who operated in the same industry as the declaratory judgment plaintiff ("Micron"). *See id.* at 901.

MTel attempts to distinguish *Micron* by pointing to other circumstances present in that case that more strongly supported a finding that Micron was in reasonable apprehension of being sued by MOSAID. (D.I. 41 at 5) For example, MOSAID had sent multiple warning letters "strongly suggesting that Micron should license its technology." *Id.* at 899. Additionally, MOSAID repeatedly "issued public statements reiterating its intent to pursue its aggressive licensing strategy" and "made similar statements in its annual reports." *Id.* MTel has not taken such actions with respect to ARRIS and Ubee. Nonetheless, MTel's suits against several manufacturers of the same type of equipment that DJ Plaintiffs manufacture and sell contributes to a legitimate concern by DJ Plaintiffs that they could face litigation from MTel next. Thus, while the suits against competitors may have provided stronger support for a finding of declaratory judgment jurisdiction in *Micron*, the Court will treat as a pertinent consideration the fact that MTel has sued suppliers who are similarly situated to ARRIS and Ubee.

**C. Totality of the Circumstances**

Accepting as true all well-pleaded factual allegations in DJ Plaintiffs' Complaints, and viewing these allegations in the light most favorable to DJ Plaintiffs, the Court concludes that these parties have established declaratory judgment jurisdiction as to non-infringement of the

patents-in-suit. The facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Hence, the Court will deny MTel's Motions.

## IV. CONCLUSION

For the reasons given above, the Court will deny MTel's Motions to dismiss for lack of subject matter jurisdiction.[8] An appropriate Order follows.

[8]On October 18, 2016, MTel filed a Motion for Suggestion of Remand to Transferor Court ("Motion for Suggestion of Remand"). (MDL D.I. 48; *see also* MDL D.I. 70, 74) MTel suggests that upon dismissal of the three Delaware actions – i.e., those filed by DJ Plaintiffs ARRIS, Ubee, and BHN – "all constituent cases in [MDL No. 2722] will reside in a single district," the Eastern District of Texas. (MDL D.I. 48 at 1; *see also id.* at 4 ("If the Court ultimately grants MTel's Motions to Dismiss the Delaware Actions, [MTel] respectfully requests that the Court grant this motion for suggestion of remand because good cause will exist to remand the remaining Texas Actions.")) As the Court has denied MTel's motions to dismiss, MTel's Motion for Suggestion of Remand will be denied as moot.